# Supreme Court of Florida

No. SC2025-1496

**IN RE: AMENDMENTS TO FLORIDA RULES OF CRIMINAL PROCEDURE - 2025 LEGISLATION.**

November 6, 2025

PER CURIAM.

In response to recent legislation, The Florida Bar's Criminal Procedure Rules Committee has filed a "fast-track" report proposing amendments to Florida Rules of Criminal Procedure 3.112 (Minimum Standards for Attorneys in Capital Cases), 3.131 (Pretrial Release), 3.202 (Expert Testimony of Mental Mitigation During Penalty Phase of Capital Trial; Notice and Examination by State Expert), 3.203 (Defendant's Intellectual Disability as a Bar to Imposition of the Death Penalty), and 3.704 (The Criminal Punishment Code).[1] The Committee voted 31-0-0 to approve the proposed amendments to rules 3.112, 3.202, 3.203, and 3.704 and

---

1. We have jurisdiction. *See* art. V, § 2(a), Fla. Const.; *see also* Fla. R. Gen. Prac. & Jud. Admin. 2.140(e).

voted 27-3-1 in favor of the proposal to amend rule 3.131. The Committee did not publish its proposal before filing it with the Court. After considering the Committee's proposal and the relevant legislation, we amend the Florida Rules of Criminal Procedure as proposed by the Committee. The more significant revisions are discussed below.

We amend rule 3.131 to create new subdivision (f)(2), which states that the "court must revoke pretrial release for a person who commits a violation of section 843.23, Florida Statutes, while the person is on pretrial release." This is consistent with the statutory changes to section 843.23 requiring revocation of pretrial release for tampering with an electronic monitoring device while on pretrial release. Subsection (5) was added to section 843.23 by chapter 2025-78, section 1, Laws of Florida, and went into effect October 1, 2025.

Next, chapter 2025-102, section 3, Laws of Florida, created a 1.25 sentencing multiplier under section 921.0024(1), Florida Statutes, for Aggravated Animal Cruelty under section 828.12(2), Florida Statutes, with that multiplier going into effect July 1, 2025. And, chapter 2025-75, section 3, Laws of Florida, created a 1.5

sentencing multiplier under section 921.0024(1) for Fleeing or Attempting to Elude or Aggravated Fleeing or Eluding under section 316.1935, Florida Statutes, with that multiplier going into effect October 1, 2025. We amend rule 3.704(d) to add these new multipliers to the general rules and definitions. Amendments to rule 3.992 (Criminal Punishment Code Scoresheet) consistent with these statutory changes were adopted separately in *In re Amendments to Florida Rule of Criminal Procedure 3.992*, No. SC2025-1036 (Fla. Oct. 23, 2025).

Finally, for rules 3.112, 3.202, and 3.203, the terminology for capital cases is broadened consistent with Florida law. In rule 3.112(b), the definition of capital trial is changed from "any first-degree murder case in which the State has not formally waived the death penalty on the record" to "any trial in which the defendant is charged with a crime punishable by death unless the death penalty is waived by the state on the record." In rule 3.202(d) the phrase "capital murder" is replaced with the phrase "a crime punishable by death." In rule 3.203, the phrase "first-degree murder cases" is replaced with the phrase "cases in which a defendant is convicted of a crime punishable by death."

Accordingly, the Florida Rules of Criminal Procedure are amended as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The amendments shall become effective immediately. Because the amendments were not published for comment prior to their adoption, interested persons shall have 75 days from the date of this opinion in which to file comments with the Court.[2]

It is so ordered.

---

2. All comments must be filed with the Court on or before January 20, 2026, with a certificate of service verifying that a copy has been served on the Committee Chair, Katelyn Knaak Johnston, Office of General Counsel, 117 West Duval Street, Suite 480, Jacksonville, Florida, 32202, kjohnston1@coj.net, and on the Bar Staff Liaison to the Committee, Kelly Smith, 651 East Jefferson Street, Tallahassee, Florida 32399, rules@floridabar.org, as well as a separate request for oral argument if the person filing the comment wishes to participate in oral argument, which may be scheduled in this case. The Committee Chair has until February 10, 2026, to file a response to any comments filed with the Court. If filed by an attorney in good standing with The Florida Bar, the comment must be electronically filed via the Florida Courts E-Filing Portal (Portal). If filed by a nonlawyer or a lawyer not licensed to practice in Florida, the comment may be, but is not required to be, filed via the Portal. Any person unable to submit a comment electronically must mail or hand-deliver the originally signed comment to the Florida Supreme Court, Office of the Clerk, 500 South Duval Street, Tallahassee, Florida 32399.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

Original Proceeding – Florida Rules of Criminal Procedure

Katelyn Knaak Johnston, Chair, Criminal Procedure Rules Committee, Jacksonville, Florida, Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, and Kelly Smith, Staff Liaison, The Florida Bar, Tallahassee, Florida,

    for Petitioner

**APPENDIX**

**RULE 3.112.    MINIMUM STANDARDS FOR ATTORNEYS IN CAPITAL CASES**

**(a)**    [No Change]

**(b)    Definitions.** A capital trial is defined as any ~~first-degree murder case in which the State has not formally waived the death penalty on the record~~trial in which the defendant is charged with a crime punishable by death unless the death penalty is waived by the state on the record. A capital appeal is any appeal in which the death penalty has been imposed. A capital postconviction proceeding is any postconviction proceeding ~~where~~in which the defendant is still under a sentence of death.

**(c)**    [No Change]

**(d)    Lists of Qualified and Disqualified Conflict Counsel.**

(1)    Every circuit ~~shall~~must maintain a list of conflict counsel qualified for appointment in capital cases in each of ~~three~~3 categories:

(A) – (C)    [No Change]

(2)    The chief judge for each circuit ~~shall~~must maintain a list of qualified counsel ~~pursuant to~~under section 27.40(3)(a), Florida Statutes.

(3)    The chief judge for each circuit ~~shall~~must maintain a list of counsel who are disqualified to provide capital case representation ~~pursuant to~~under section 27.7045, Florida Statutes, and such list and any amendments thereto ~~shall~~must be forwarded to the chief judge of every other circuit.

**(e)    Appointment of Counsel.** A court must appoint lead counsel and, ~~up~~on written application and a showing of need by lead counsel, should appoint co-counsel to handle every capital trial in which the defendant is not represented by retained counsel. Lead counsel ~~shall~~must have the right to select co-counsel from

attorneys on the lead counsel or co-counsel list. Both attorneys ~~shall~~must be reasonably compensated for the trial and sentencing phase. Except under extraordinary circumstances, only ~~one~~1 attorney may be compensated for other proceedings. In capital cases in which the Public Defender or Criminal Conflict and Civil Regional Counsel is appointed, the Public Defender or Criminal Conflict and Civil Regional Counsel ~~shall~~must designate lead and co-counsel.

      **(f)** **Lead Trial Counsel.** Lead trial counsel assignments should be given to attorneys who:

      (1)    [No Change]

      (2)    are experienced and active trial practitioners with at least ~~five~~5 years of litigation experience in the field of criminal law; and

      (3)    have prior experience as lead counsel in no fewer than ~~nine~~9 state or federal jury trials of serious and complex cases which were tried to completion, as well as prior experience as lead defense counsel or co-counsel in at least ~~two~~2 state or federal cases tried to completion in which the death penalty was sought. In addition, of the ~~nine~~9 jury trials which were tried to completion, the attorney should have been lead counsel in at least ~~three~~3 cases in which the charge was murder; or alternatively, of the ~~nine~~9 jury trials, at least ~~one~~1 was a murder trial and an additional ~~five~~5 were felony jury trials; and

      (4) – (6)    [No Change]

      (7)    have attended within the last ~~two~~2 years a continuing legal education program of at least ~~twelve~~12 hours' duration devoted specifically to the defense of capital cases.

      **(g)** **Co-counsel.** Trial co-counsel assignments should be given to attorneys who:

      (1)    [No Change]

(2)    qualify as lead counsel under ~~paragraph~~subdivision (f) of these standards or meet the following requirements:

(A)    are experienced and active trial practitioners with at least ~~three~~3 years of litigation experience in the field of criminal law; and

(B)    have prior experience as lead counsel or co-counsel in no fewer than ~~three~~3 state or federal jury trials of serious and complex cases which were tried to completion, at least ~~two~~2 of which were trials in which the charge was murder; or alternatively, of the ~~three~~3 jury trials, at least ~~one~~1 was a murder trial and one was a felony jury trial; and

(C) – (D)    [No Change]

(E)    have attended within the last ~~two~~2 years a continuing legal education program of at least ~~twelve~~12 hours' duration devoted specifically to the defense of capital cases.

**(h)    Appellate Counsel.** Appellate counsel assignments should be given to attorneys who:

(1)    [No Change]

(2)    are experienced and active trial or appellate practitioners with at least ~~five~~5 years of experience in the field of criminal law; and

(3)    have prior experience in the appeal of at least ~~one~~1 case ~~where~~in which a sentence of death was imposed, as well as prior experience as lead counsel in the appeal of no fewer than ~~three~~3 felony convictions in federal or state court, at least ~~one~~1 of which was an appeal of a murder conviction; or alternatively, have prior experience as lead counsel in the appeal of no fewer than ~~six~~6 felony convictions in federal or state court, at least ~~two~~2 of which were appeals of a murder conviction; and

(4) – (5)    [No Change]

(6)   have attended within the last ~~two~~2 years a continuing legal education program of at least ~~twelve~~12 hours' duration devoted specifically to the defense of capital cases.

**(i)   Notice of Appearance.** An attorney who is retained or appointed in place of the Public Defender or Criminal Conflict and Civil Regional Counsel to represent a defendant in a capital case ~~shall~~must immediately file a notice of appearance certifying that ~~he or she~~the attorney meets the qualifications of this rule. If the office of the Public Defender or Criminal Conflict and Civil Regional Counsel is appointed to represent the defendant, the Public Defender or Criminal Conflict and Civil Regional Counsel ~~shall~~must certify that the individuals or assistants assigned as lead and co-counsel meet the requirements of this rule. A notice of appearance filed under this rule ~~shall~~must be served on the defendant.

**(j)   Limitation on Caseloads.**

(1)   [No Change]

(2)   *Public Defender.* If a Public Defender or Criminal Conflict and Civil Regional Counsel seeks to refuse appointment to a new capital case based on a claim of excessive caseload, the matter should be referred to the Chief Judge of the circuit or to the administrative judge as so designated by the Chief Judge. The Chief Judge or ~~his or her~~the chief judge's designate should coordinate with the Public Defender or Criminal Conflict and Civil Regional Counsel to assess the number of attorneys involved in capital cases, evaluate the availability of prospective attorneys, and resolve any representation issues.

**(k)   Qualifications of Lead Counsel in Capital Postconviction Proceedings.** In order to serve as lead counsel, as set forth in rule 3.851, for the defendant in a capital postconviction proceeding, an attorney ~~shall~~must have:

(1) – (2)   [No Change]

(3)   prior participation in a combined total of 5 proceedings in any of the following areas, at least 2 of which ~~shall~~must be from subdivision (k)(3)(C), (k)(3)(D), or (k)(3)(E) below:

(A) – (E)     [No Change]

**(*l*)     Exceptional Circumstances.** In the event that the trial court determines that exceptional circumstances require counsel not meeting the requirements of this rule, the trial court ~~shall~~must enter an order specifying, in writing, the exceptional circumstances requiring deviation from the rule and the court's explicit determination that counsel chosen will provide competent representation in accord with the policy concerns of the rule.

### Committee Comments

[No Change]

### Criminal Court Steering Committee Note

[No Change]

## RULE 3.131.   PRETRIAL RELEASE

**(a)**     [No Change]

**(b)     Hearing at First Appearance—Conditions of Release.**

(1) – (2)     [No Change]

(3)     In determining whether to release a defendant on bail or other conditions, and what that bail or those conditions may be, the court may consider the nature and circumstances of the offense charged and the penalty provided by law; the weight of the evidence against the defendant; the defendant's family ties, length of residence in the community, employment history, financial resources, need for substance abuse evaluation ~~and/~~or treatment, and mental condition; the defendant's past and present conduct, including any record of convictions, previous flight to avoid prosecution, or failure to appear at court proceedings; the nature and probability of danger that the defendant's release poses to the community; the source of funds used to post bail; whether the defendant is already on release pending resolution of another criminal proceeding or is on probation, community control, parole,

or other release pending completion of sentence; and any other facts the court considers relevant.

(4) – (6)    [No Change]

**(c) – (d)** [No Change]

**(e)    Bail Before Conviction; Condition of Undertaking.**

(1)    [No Change]

(2)    If a person is admitted to bail after being held to answer by a judge or after an indictment or information on which the person is to be tried has been filed, the condition of the undertaking shall be that the person will appear to answer the charges before the court in which ~~he or she~~the person may be prosecuted and submit to the orders and process of the court and will not depart without leave.

**(f)    Revocation of Pretrial Release.**

(1)    Any judge presiding at a first appearance hearing may revoke a defendant's pretrial release status pursuant to s.ection 903.0471, Florida Statutes, on a case not assigned to the first appearance judge but that is pending in the same judicial circuit as the first appearance hearing.

(2)    The court must revoke pretrial release for a person who commits a violation of section 843.23, Florida Statutes, while the person is on pretrial release.

(3)    The court in its discretion for good cause, any time after a defendant who is at large on bail appears for trial, may commit the defendant to the custody of the proper official to abide by the judgment, sentence, and any further order of the court.

**(g)    Arrest and Commitment by Court.** The court in which the cause is pending may direct the arrest and commitment of the defendant who is at large on bail when:

(1) – (3)    [No Change]

The order for the commitment of the defendant shall recite generally the facts on which it is based and shall direct that the defendant be arrested by any official authorized to make arrests and that the defendant be committed to the official in whose custody ~~he or she~~the defendant would be if ~~he or she~~the defendant had not been given bail, to be detained by such official until legally discharged. The defendant shall be arrested pursuant to such order on a certified copy thereof, in any county, in the same manner as on a warrant of arrest. If the order provided for is made because of the failure of the defendant to appear for judgment, the defendant shall be committed. If the order is made for any other cause, the court may determine the conditions of release, if any.

**(h) – (l)**    [No Change]

## Committee Notes

[No Change]

## Court Comment

[No Change]

**RULE 3.202.    EXPERT TESTIMONY OF MENTAL MITIGATION DURING PENALTY PHASE OF CAPITAL TRIAL; NOTICE AND EXAMINATION BY STATE EXPERT**

**(a)**    [No Change]

**(b)    Notice of Intent to Present Expert Testimony of Mental Mitigation.** When in any capital case, in which the state has given notice of intent to seek the death penalty under subdivision (a) of this rule, it ~~shall~~must be the intention of the defendant to present, during the penalty phase of the trial, expert testimony of a mental health professional, who has tested, evaluated, or examined the defendant, in order to establish statutory or nonstatutory mental mitigating circumstances, the

defendant ~~shall~~<u>must</u> give written notice of intent to present such testimony.

**(c)** **Time for Filing Notice; Contents.** The defendant ~~shall~~<u>must</u> give notice of intent to present expert testimony of mental mitigation not less than 20 days before trial. The notice ~~shall~~<u>must</u> contain a statement of particulars listing the statutory and nonstatutory mental mitigating circumstances the defendant expects to establish through expert testimony and the names and addresses of the mental health experts by whom the defendant expects to establish mental mitigation, insofar as is possible.

**(d)** **Appointment of State Expert; Time of Examination.** After the filing of such notice and on the motion of the state indicating its desire to seek the death penalty, the court ~~shall~~<u>must</u> order that, within 48 hours after the defendant is convicted of ~~capital murder~~<u>a crime punishable by death</u>, the defendant be examined by a mental health expert chosen by the state. Attorneys for the state and defendant may be present at the examination. The examination ~~shall~~<u>must</u> be limited to those mitigating circumstances the defendant expects to establish through expert testimony.

**(e)** [No Change]

## Committee Note

[No Change]

### RULE 3.203. DEFENDANT'S INTELLECTUAL DISABILITY AS A BAR TO IMPOSITION OF THE DEATH PENALTY

**(a)** **Scope.** This rule applies in all ~~first-degree murder~~ cases in which <u>a defendant is convicted of a crime punishable by death,</u> the state attorney has not waived the death penalty on the record<u>,</u> and the defendant's intellectual disability becomes an issue.

**(b)** [No Change]

**(c)	Motion for Determination of Intellectual Disability as a Bar to Execution; Contents; Procedures.**

(1)	A defendant who intends to raise intellectual disability as a bar to execution ~~shall~~must file a written motion to establish intellectual disability as a bar to execution with the court.

(2)	The motion ~~shall~~must state that the defendant is intellectually disabled and, if the defendant has been tested, evaluated, or examined by 1 or more experts, the names and addresses of the experts. ~~Copies of r~~Reports containing the opinions of any experts named in the motion ~~shall~~must be attached to the motion. The court ~~shall~~must appoint an expert chosen by the state attorney if the state attorney so requests. The expert ~~shall~~must promptly test, evaluate, or examine the defendant and ~~shall~~must submit a written report of any findings to the parties and the court.

(3)	If the defendant has not been tested, evaluated, or examined by 1 or more experts, the motion ~~shall~~must state that fact and the court ~~shall~~must appoint 2 experts who ~~shall~~must promptly test, evaluate, or examine the defendant and ~~shall~~must submit a written report of any findings to the parties and the court.

(4) – (5)	[No Change]

**(d)	Time for filing Motion for Determination of Intellectual Disability as a Bar to Execution.** The motion for a determination of intellectual disability as a bar to execution ~~shall~~must be filed not later than 90 days ~~prior to~~before trial, or at such time as is ordered by the court.

**(e)	Hearing on Motion to Determine Intellectual Disability.** The circuit court ~~shall~~must conduct an evidentiary hearing on the motion for a determination of intellectual disability. At the hearing, the court ~~shall~~must consider the findings of the experts and all other evidence on the issue of whether the defendant is intellectually disabled. The court ~~shall~~must enter a written order prohibiting the imposition of the death penalty and setting forth the court's specific findings in support of the court's determination if the court finds that the defendant is intellectually disabled as defined in subdivision (b) of this rule. The court

~~shall~~must stay the proceedings for 30 days from the date of rendition of the order prohibiting the death penalty or, if a motion for rehearing is filed, for 30 days following the rendition of the order denying rehearing, to allow the state the opportunity to appeal the order. If the court determines that the defendant has not established intellectual disability, the court ~~shall~~must enter a written order setting forth the court's specific findings in support of the court's determination.

**(f)**    [No Change]

**(g)    Finding of Intellectual Disability; Order to Proceed.** If, after the evidence presented, the court is of the opinion that the defendant is intellectually disabled, the court ~~shall~~must order the case to proceed without the death penalty as an issue.

**(h)**    [No Change]

**(i)    Motion to Establish Intellectual Disability as a Bar to Execution; Stay of Execution.** The filing of a motion to establish intellectual disability as a bar to execution ~~shall~~will not stay further proceedings without a separate order staying execution.


## RULE 3.704.    THE CRIMINAL PUNISHMENT CODE

**(a) – (c)**    [No Change]

**(d)    General Rules and Definitions.**

(1) – (8)    [No Change]

(9)    "Victim injury" is scored for physical injury or death suffered by a person as a direct result of any offense pending before the court for sentencing. Except as otherwise provided by law, the sexual penetration and sexual contact points will be scored as follows. Sexual penetration points are scored if an offense pending before the court for sentencing involves sexual penetration. Sexual contact points are scored if an offense pending before the court for sentencing involves sexual contact, but no penetration. If the victim

of an offense involving sexual penetration or sexual contact without penetration suffers any physical injury as a direct result of an offense pending before the court for sentencing, that physical injury must be scored in addition to any points scored for the sexual contact or sexual penetration.

Victim injury must be scored for each victim physically injured and for each offense resulting in physical injury whether there are 1 or more victims. However, victim injury must not be scored for an offense for which the offender has not been convicted.

Victim injury resulting from 1 or more capital offenses before the court for sentencing must not be included upon any scoresheet prepared for non-capital offenses also pending before the court for sentencing. This does not prohibit the scoring of victim injury as a result of the non-capital offense or offenses before the court for sentencing.

(10) – (11)  [No Change]

(12)  A single assessment of 30 prior serious felony points is added if the offender has a primary offense or any additional offense ranked in level 8, 9, or 10 and 1 or more prior serious felonies. A "prior serious felony" is an offense in the offender's prior record ranked in level 8, 9, or 10 and for which the offender is serving a sentence of confinement, supervision, or other sanction or for which the offender's date of release from confinement, supervision, or other sanction, whichever is later, is within 3 years before the date the primary offense or any additional offenses were committed. Out-of-state convictions wherein the analogous or parallel Florida offenses are located in offense severity level 8, 9, or 10 must be considered prior serious felonies.

(13)  [No Change]

(14)  "Prior record" refers to any conviction for an offense committed by the offender prior to the commission of the primary offense. Prior record includes convictions for offenses committed by the offender as an adult or as a juvenile, convictions by federal, out-of-state, military, or foreign courts and convictions for violations of

county or municipal ordinances that incorporate by reference a penalty under state law. Federal, out--of--state, military or foreign convictions are scored at the severity level at which the analogous or parallel Florida crime is located.

(A) – (E)    [No Change]

(15)  [No Change]

(16)  Community sanction violation points occur when the offender is found to have violated a condition of:

(A) – (C)    [No Change]

Community sanction violation points are assessed when a community sanction violation is before the court for sentencing. Six community sanction violation points must be assessed for each violation or if the violation results from a new felony conviction, 12 community sanction violation points must be assessed. For violations occurring on or after March 12, 2007, if the community sanction violation that is not based upon a failure to pay fines, costs, or restitution is committed by a violent felony offender of special concern as defined in section 948.06, Florida Statutes, 12 community sanction violation points must be assessed or if the violation results from a new felony conviction, 24 community sanction points must be assessed. Where there are multiple violations, points may be assessed only for each successive violation that follows a continuation of supervision, or modification or revocation of the community sanction before the court for sentencing and are not to be assessed for violation of several conditions of a single community sanction. Multiple counts of community sanction violations before the sentencing court may not be the basis for multiplying the assessment of community sanction violation points.

(17)  Possession of a firearm, semiautomatic firearm, or a machine gun during the commission or attempt to commit a crime will result in additional sentence points. Eighteen sentence points are assessed if the offender is convicted of committing, or attempting to commit, any felony other than those enumerated in subsection 775.087(2), Florida Statutes, while having in his or

herthe offender's possession a firearm as defined in subsection 790.001(6), Florida Statutes. Twenty-five sentence points are assessed if the offender is convicted of committing or attempting to commit any felony other than those enumerated in subsection 775.087(3), Florida Statutes, while having in his or herthe offender's possession a semiautomatic firearm as defined in subsection 775.087(3), Florida Statutes, or a machine gun as defined in subsection 790.001(9), Florida Statutes. Only 1 assessment of either 18 or 25 points can be made.

(18) – (24) [No Change]

(25)   If the primary offense is aggravated animal cruelty under section 828.12(2), Florida Statutes, that included the knowing and intentional torture or torment of an animal that injured, mutilated, or killed the animal, the subtotal sentence points are multiplied by 1.25. As used in this paragraph, the term "animal" does not include an animal used for agricultural purposes or permitted as captive wildlife as authorized under section 379.303, Florida Statutes.

(26)   If the primary offense is fleeing or attempting to elude a law enforcement officer or aggravated fleeing or eluding in violation of section 316.1935, Florida Statutes, and in the offender's prior record, there is 1 or more violations of section 316.1935, the subtotal sentence points are multiplied by 1.5.

(2527)      "Total sentence points" are the subtotal sentence points or the enhanced subtotal sentence points.

(2628)      The lowest permissible sentence is the minimum sentence that may be imposed by the trial court, absent a valid reason for departure. The lowest permissible sentence is any nonstate prison sanction in which the total sentence points equals or is less than 44 points, unless the court determines within its discretion that a prison sentence, which may be up to the statutory maximums for the offenses committed, is appropriate. When the total sentence points exceeds 44 points, the lowest permissible sentence in prison months must be calculated by subtracting 28 points from the total sentence points and decreasing the remaining

- 18 -

total by 25 percent. The total sentence points must be calculated only as a means of determining the lowest permissible sentence. The maximum sentence for each individual felony offense is the statutory maximum as provided in s.ection 775.082, Florida Statutes, unless the lowest permissible sentence exceeds the statutory maximum for that offense. If the lowest permissible sentence exceeds the statutory maximum for an individual felony offense, the lowest permissible sentence replaces the statutory maximum and must be imposed for that offense. Sentences for multiple felony offenses may be imposed concurrently or consecutively. However, any sentence to state prison must exceed 1 year. If the total sentence points are greater than or equal to 363, the court may sentence the offender to life imprisonment.

(2729) The sentence imposed must be entered on the scoresheet.

(2830) For those offenses having a mandatory minimum sentence, a scoresheet must be completed and the lowest permissible sentence under the Code calculated. If the lowest permissible sentence is less than the mandatory minimum sentence, the mandatory minimum sentence takes precedence. If the lowest permissible sentence exceeds the mandatory sentence, the requirements of the Criminal Punishment Code and any mandatory minimum penalties apply. Mandatory minimum sentences must be recorded on the scoresheet.

(2931) Any downward departure from the lowest permissible sentence, as calculated according to the total sentence points under section 921.0024, Florida Statutes, is prohibited unless there are circumstances or factors that reasonably justify the downward departure. Circumstances or factors that can be considered include, but are not limited to, those listed in subsection 921.0026(2), Florida Statutes.

(A) – (B)    [No Change]

If a split sentence is imposed, the total sanction (incarceration and community control or probation) must not exceed the term

provided by general law or the maximum sentence under the Criminal Punishment Code.

(3032) If the lowest permissible sentence under the criminal punishment code is a state prison sanction but the total sentencing points do not exceed 48 points (or 54 points if 6 of those points are for a violation of probation, community control, or other community supervision that does not involve a new crime), the court may sentence the defendant to probation, community control, or community supervision with mandatory participation in a prison diversion program, as provided for in section 921.00241, Florida Statutes, if the defendant meets the requirements for that program as set forth in section 921.00241, Florida Statutes.

(3133) If the total sentence points equal 22 or less, the court must sentence the offender to a nonstate prison sanction unless it makes written findings that a nonstate prison sanction could present a danger to the public. Unless there is a stipulation, there must be a finding by the jury that a nonstate prison sanction could present a danger to the public before the court may sentence a defendant to prison under section 775.082(10), Florida Statutes.

(3234) Sentences imposed after revocation of probation or community control must be imposed according to the sentencing law applicable at the time of the commission of the original offense.

### Committee Note

[No Change]